U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 2 0 2006

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| OLIVE MAYEAUX, ET AL. | CIVIL ACTION NO. 04-0312 |
| -vs- | JUDGE DRELL |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

Plaintiffs Olive Mayeaux, Ralph Mayeaux, Jr., Tammy Mayeaux Ducote, and Michelle Mayeaux Gauthier brought this suit against the United States of America ("government") seeking damages, costs, and attorney's fees for the death of Ralph Mayeaux, Sr. as a result of the allegedly substandard care he received at the Veterans' Affairs Medical Center ("VAMC") in Pineville, Louisiana. A bench trial was held on June 14, 2006. Considering the evidence, argument, and briefs of counsel, and for the reasons set forth below, this Court renders judgment in favor of the government.

### I. ISSUES AND FINDINGS OF FACT

**A. Background and VAMC Treatment**

A veteran of the Vietnam War, Mr. Mayeaux was born on October 19, 1946. He collapsed in his home in Bunkie, Louisiana on January 29, 2003 and was

pronounced dead that same day at Bunkie General Hospital. Mr. Mayeaux's death certificate lists the cause of death as an acute myocardial infarction. No autopsy was performed. Unfortunately, Mr. Mayeaux was a stoic and was not particularly communicative with his doctors. His family was largely unaware of the details of his medical condition as they did not attend any of his medical appointments with him. His wife testified that he was often quiet and kept to himself.

Mr. Mayeaux suffered from several health ailments, including gastritis, degenerative joint disease, and hypertension. He was overweight and was a heavy smoker. He first started coming to the VAMC for medical care in the early 1990s. Dr. Robert Heldt, a VAMC physician, treated Mr. Mayeaux for his gastrointestinal problems as far back as 1995. Dr. Heldt first noted high blood pressure in 1996 and asked Mr. Mayeaux to keep a blood pressure record. Mr. Mayeaux started taking cholesterol medication in 1997. In treating Mr. Mayeaux, however, Dr. Heldt did not have available to him all of Mr. Mayeaux's electrocardiogram test results. Further, Dr. Heldt, who trained in urology, was a primary care physician, rather than a cardiologist. Dr. Heldt testified that if his symptoms, which did not include any complaints of shortness of breath, indicated a condition beyond his documented gastrointestinal problems, he would have ordered further testing.

In 2000, Mr. Mayeaux failed a stress test for the National Guard.[1] He was referred to the VAMC to be cleared and was seen by a cardiologist there. He later visited the VAMC to receive clearance for his 2002 back surgery. On February 2, 2001, Mr. Mayeaux was injured in a motor vehicle accident. Prior to the accident, he had displayed symptoms of spinal stenosis. He underwent a left retroperitoneal exploration and anterior lumbar fusion on May 14, 2002. As a result of his back problems, he experienced a significant amount of pain and had difficulty walking for any length beyond a short distance. From 2001 until the end of his life, Mr. Mayeaux only visited the VAMC four times. In addition, his family doctor, L.J. Mayeux, M.D., treated him between February 6, 2001 and November 21, 2002.[2] [Ex. P-9, p.17, lns. 14-18] Although his family members testified that he sometimes complained of heartburn, Mr. Mayeaux never complained of chest pains to them or to VAMC physicians.

Clement F.X. Carroll, M.D., a cardiologist at the VAMC, evaluated Mr. Mayeaux on April 2, 2001. He observed "no cardiac symptoms," "minor inferolateral ischemia," and "good left ventricular function." [Ex. P-10, p.356] He determined the ejection fraction tests performed to be normal. Mr. Mayeaux underwent a persantine/cardiolite stress test on May 16, 2001, which revealed a

---

[1] The record is unclear as to the parameters of this stress test and also whether any report as to the results was furnished to Mr. Mayeaux's VAMC physicians.

[2] Dr. Mayeux is not related to Ralph Mayeaux, Sr. The two surnames are spelled slightly differently. Incidentally, Dr. Mayeux is also the coroner who signed the death certificate.

"significant reversible defect in distribution of left circumflex artery." [Id., p.358] On May 24, 2001, Dr. Keshavji Bhanderi, who succeeded Dr. Heldt as Mr. Mayeaux's treating physician, elected not to prescribe a beta blocker drug for him because of his low pulse. Dr. Carroll also consulted with Mr. Mayeaux during this visit. During a follow-up visit on April 1, 2002, Dr. Carroll noted "one reversible lesion of 44% in the distribution of the circumflex coronary artery," "good left ventricular function," that Mr. Mayeaux had "single vessel coronary artery disease," and that he was a "low cardiac risk for the proposed [back] surgery."[3] [Ex. P-10, p.364] He observed left ventricular hypertrophy and strain from the EKG. [Id.] After this workup, Dr. Carroll cleared him for surgery.

Dr. Bhanderi observed that Mr. Mayeaux had stopped taking his cholesterol medication during a September 26, 2002 visit. Indeed, the record indicates that Mr. Mayeaux failed to refill his prescriptions for Lovastatin, a cholesterol-lowering medication classified as a statin, after September 27, 2001. Dr. Bhanderi saw Mr. Mayeaux on his final visit to the VAMC on January 6, 2003, just a few weeks before his death. During that visit, Mr. Mayeaux complained of a cold and cough as well as heartburn. He did not complain of chest pain. Noting that Mr. Mayeaux had been seen by a cardiologist for coronary artery disease, Dr. Bhanderi prescribed him an antibiotic, medication for gastroesophageal reflux disease, and

---

[3] Between April 2001 and April 2002, Mr. Mayeaux, who was 5'7", gained 18 pounds, rising from 193 pounds to 211 pounds.

4

continued his blood pressure medication. Mr. Mayeaux received further advice to quit smoking but declined a referral to a smoking cessation program.

**B.     Plaintiffs' Expert: David A. Garza, M.D.**

David A. Garza, M.D., a board-certified cardiologist, offered recorded testimony and an expert report on behalf of the plaintiffs. Dr. Garza believed that the negligence of Drs. Bhanderi and Carroll was the proximate cause of Mr. Mayeaux's death. He cited their failure to inform Mr. Mayeaux that he had coronary artery disease, to offer him the opportunity to consider cardiac catheterization and to undergo aspirin therapy as omissions breaching the standard of care. [Ex. P-3, p.4] Dr. Garza did not review the entire record, but rather only the VAMC records in preparing his opinion.

Garza strongly advocated catheterization "once the patient [became] symptomatic." [Id.] One of the bases for Dr. Garza's opinion was a January 25, 2005 letter from plaintiffs' counsel, John T. Bennett, indicating that Olive Mayeaux reported that Ralph Mayeaux, Sr. had "very significant chest pains and extreme shortness of breath." [Id. p.3] This observation is inconsistent with Mrs. Mayeaux's testimony, in which she stated that he never complained of chest pains, rather only of heartburn. Moreover, Garza acknowledged that Mr. Mayeaux was asymptomatic until January 6, 2003. [Ex. P-1, p.51, lns. 17-24] Dr. Garza's report indicates that the "multi-pronged" treatment for ischemic heart disease includes treatment for hypertension and high cholesterol as well as

5

encouragement of smoking cessation. [Ex. P-3, p.3] Mr. Mayeaux received all of these but did not take his medication for cholesterol and did not quit smoking.

C.   **Treating Physician: L.J. Mayeux, M.D.**

Dr. L.J. Mayeux, who did not testify at trial, believed that Mr. Mayeaux died of a massive heart attack, although this opinion is not supported by any autopsy evidence. In his view, the standard of care would have required additional stress testing and/or a cardiac catheterization. He was aware, however, that Mr. Mayeaux had hypertension and believed that he was receiving treatment for this condition from the VAMC. Mr. Mayeaux did not complain of any heart-related problems and did not manifest any symptoms, such as angina, to Dr. Mayeux at any point in his treatment with Dr. Mayeux between February 2001 and November 2002. Dr. Mayeux is not a cardiologist and thus is not qualified to give an expert opinion in that field.

Dr. Mayeux apparently saw no need to refer Mr. Mayeaux to a cardiologist for follow-up care. It is interesting that he faults the VAMC physicians for allegedly failing to do the same. Dr. Mayeux fails to acknowledge that he saw Mr. Mayeaux far more frequently than the doctors at the VAMC and that the time frames of Mr. Mayeaux's visits to him and to the VAMC overlapped. As such, we must assume that he concurred with the VAMC's treatment plan at the time, as he did not deviate from it by suggesting further referral, workup, or cardiac catheterization.

### D. Defendant's Expert: David M. Caskey, M.D.

David M. Caskey, M.D., a board-certified cardiologist, prepared an expert report and testified on behalf of the government. Dr. Caskey believed that the VAMC physicians cared for Mr. Mayeaux appropriately and that they met and even exceeded the standard of care. He observed that Mr. Mayeaux's symptoms of gastric problems never manifested themselves "in a character that would suggest angina." [Ex. P-8, p.1] Further, Mr. Mayeaux was receiving therapy for his various medical problems, including high blood pressure, high cholesterol, depression, degenerative joint disease, gastritis, and ischemic cardiovascular disease. Because of a low pulse, Mr. Mayeaux's VAMC physicians did not find it appropriate to administer beta blockers, a therapy which could have improved his condition, according to Dr. Caskey.

Mr. Mayeaux's April 2001 testing indicated a normal ejection fracture, measuring the left ventricle's ability to pump blood to the rest of the body, of greater than 60%. The persantine stress test that followed indicated ischemia of 44%, not considered to be severe. [Id. p.2] Without symptoms of angina and shortness of breath, "little action was necessary other than that already administered by the physicians." [Id.] When asked about the use of cardiac catheterization for evaluating male patients over the age of 55, Dr. Caskey opined that in the absence of classic angina symptoms, a catheterization would not be warranted unless additional risk factors were present. Mr. Mayeaux did not

present with any such factors. Dr. Caskey further observed that such a catheterization would more properly be left to the physician's discretion and was in no way mandatory.

Dr. Caskey believed Mr. Mayeaux's death was likely a result of sudden death syndrome, frequently associated with coronary ischemia. He also thought that there was a strong possibility that Vioxx caused Mr. Mayeaux's death. Indeed, Dr. Mayeux had prescribed Vioxx for Mr. Mayeaux. Even Dr. Garza admitted that it was possible that Mr. Mayeaux's death was related to his use of Vioxx. There is no record indication of Mr. Mayeaux's having communicated to VAMC physicians the list of drugs he was taking prescribed by Dr. Mayeux. Dr. Caskey noted that without an autopsy, it is impossible to be certain of the cause of Mr. Mayeaux's death.

Upon questioning from the Court, he also provided testimony regarding the standard of care in such cases. Dr. Caskey indicated that the standard for determining whether to perform a cardiac catheterization is threefold. First, a cardiologist would look for evidence of high risk from noninvasive testing (typically the Bruce protocol) and very low exercise capacity with significant markers of ischemia based on imaging, EKG testing, and other diagnostic criteria. The second is for the patient to have angina for which he is receiving medical treatment (such as beta blockers, ACE inhibitors, and/or nitrates) and that he can hardly perform any exercise whatsoever. Finally, a catheterization would be

appropriate for a patient who has been resuscitated from sudden cardiac death or has some type of arrhythmia that would lead to sudden cardiac death. According to Dr. Caskey, Mr. Mayeaux did not meet any of these criteria.

## II. <u>CONCLUSIONS OF LAW</u>

This case is properly before the Court under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2674, which provides that the government is liable for those personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b). Liability extends to the United States under the FTCA just as it would to a private individual in a similar situation. Accordingly, Louisiana state law applies in order to determine such liability. <u>Richards v. United States</u>, 369 U.S. 1, 11-12, 82 S. Ct. 585, 592-93 (1962); <u>Charles v. United States</u>, 15 F.3d 400, 402-03 (5th Cir. 1994).

Under Louisiana law, the plaintiff in a medical malpractice action has the burden of proving: 1) the relevant standard of care in that community under similar circumstances; 2) a breach of that standard of care by defendant; and 3) causation. See LA. REV. STAT. § 9:2794(A); <u>Martin v. East Jefferson General Hosp.</u>, 582 So. 2d 1272, 1276 (La. 1991). "In medical malpractice actions . . . the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician. . . . [I]njury alone does not raise a presumption of . . . negligence." LA. REV. STAT. § 9:2794(C). The standard of care to which a physician is held is

that he must possess the degree of knowledge or skill and exercise the degree of care normally possessed or exercised by physicians practicing in a similar location and under similar circumstances. LA. REV. STAT. § 9:2794(A)(1).

In this case, we must identify the relevant standard of care and determine whether it was breached. This inquiry is not the same as asking whether some additional means could have been taken for Mr. Mayeaux. Here, we observe that Mr. Mayeaux did not exhibit symptoms of angina and shortness of breath in the course of his treatment. Based on our review of the facts surrounding Mr. Mayeaux's death, the standard of care was met through the prescription of blood pressure and cholesterol medication, additional monitoring, and counseling regarding weight loss, nutrition, and smoking cessation. Mr. Mayeaux's failure to take his cholesterol medication, being overweight, and continuing to smoke heavily all contributed to his death.

We find no breach of the standard of care due to the failure to perform a cardiac catheterization. The patient was asymptomatic and was under the proper course of treatment. Although Drs. Garza and Caskey disagree on this point, we must point out that Dr. Garza, who only reviewed the VAMC records, was under the impression that Mr. Mayeaux had presented significant symptoms that simply are not corroborated by the record. Without these symptoms, Dr. Garza's conclusion of a breach of the standard of care is far from clear. While Mr. Mayeaux's untimely passing is unfortunate, the plaintiffs have failed to prove by

a preponderance of the evidence that his death was caused by medical malpractice on the part of the VAMC.

## III. CONCLUSION

For the foregoing reasons, this Court RENDERS JUDGMENT IN FAVOR OF DEFENDANT, the United States of America.

SIGNED on this 20 day of July, 2006, at Alexandria, Louisiana.

---
DEE D. DRELL
UNITED STATES DISTRICT JUDGE